Joseph M. Meier, ISB No. 3314
COSHO HUMPHREY, LLP.
1501 S. Tyrell Lane
Boise, Idaho 83706
Telephone (208) 344-7811
Facsimile (208) 338-3290
E-mail: jmeier@cosholaw.com

Counsel for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 17-40347-JDP |
| High Country Fusion Co., Inc. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |
| ......｜ ) | | |

**MOTION FOR ORDERS PURSUANT TO 11 U.S.C. §§ 105(A) AND 363(B) AND FED. R. BANKR. P. 2002, 6004, AND 9014 (I) APPROVING (A) SALE PROCEDURES AND (B) THE FORM AND MANNER OF NOTICE OF THE SALE OF CERTAIN ASSETS; (II) APPROVING THE SALE OF CERTAIN ASSETS; (III) WAIVING THE 14-DAY STAY OF FED. R. BANKR. P. 6004(H); AND (IV) GRANTING RELATED RELIEF**

04158512.4

**SALE MOTION**

## TABLE OF EXHIBITS

| Exhibit | Document |
|---------|----------|
| A | Asset Purchase Agreement, dated as of September 8, 2017 by and between Debtor and the Purchaser |
| B | Order Approving the Sale Procedures |
| C | Order Authorizing and Approving Sale |
| D | Sale Procedures |
| E | Notice of Sale |

04158512.4

Client:3203189.1

High Country Fusion Company, Inc. ("Debtor") hereby moves the Court for entry of orders, pursuant to 11 U.S.C. §§ 105(a), 363(b), 365 and FED. R. BANKR. P. 2002, 6004, and 9014:

(a)    approving (i) the transactions contemplated in the Asset Purchase Agreement dated September 8, 2017, a copy of which (excluding exhibits) is attached hereto as Exhibit A (the "Stalking Horse APA")[1] by and between Debtor and Consolidated Pipe and Supply Company, Inc. (the "Purchaser"); or (ii) the same transactions pursuant to a higher and better offer received by Debtor pursuant to the Sale Procedures (as described below) (collectively, the "Sale");

(b)    authorizing and approving as reasonable and necessary the sale procedures in connection with the Sale in the form attached as Exhibit B (the "Sale Procedures"), including without limitation approving the form of the Stalking Horse APA, the Breakup Fee (as defined in the Stalking Horse APA), and the Auction contemplated in the Sale Procedures;

(c)    scheduling a final hearing to consider approval of the Sale (the "Sale Hearing");

(d)    establishing the form and manner of notices related thereto; and

(e)    waiving the fourteen-day stay imposed by Bankruptcy Rules 6004(h).

In support of this Motion, Debtor respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    Debtor seeks approval to sell substantially all of its assets—pursuant to section 363 of the Bankruptcy Code.  The Debtor employs approximately 40 people who work at

---

[1] Unless otherwise defined in this Sale Motion, capitalized terms will have the meaning ascribed to them in the Purchase Agreement.

three locations in Idaho, Utah and North Dakota. The assets being sold are all of Debtor's assets, properties, rights and interests of any nature whatsoever, excluding those assets identified as "Excluded Assets" in the Stalking Horse APA (hereinafter collectively called "assets", and as more particularly described in the Stalking Horse APA, the "Purchased Assets").

2.      The transactions proposed in this Sale Motion will result in a significant return to Debtor's creditors and present to many of Debtor's employees an opportunity for new employment with the Purchaser on terms designated by Purchaser..

3.      The major elements of the proposed transactions with the Purchaser include the following:

- The Purchaser will pay to Debtor the Purchase Price of $3,500,000.00, subject to the Holdback Amount and any other allowed adjustments, all as defined and set forth in the Stalking Horse APA..

- The Purchaser will acquire the assets from Debtor free and clear of all liens, encumbrances and interests pursuant to section 363 of the Bankruptcy Code.

- The Purchaser will assume the lease of Debtor's facility in Salt Lake City, Utah and will enter into new leases for Debtor's facilities in Idaho and North Dakota.

- Debtor anticipates that the Purchaer may offer employment to most, if not all, of Debtor's employees.

4.      The Sale requires a purchaser that is adequately capitalized and is familiar with Debtor's business. Debtor believes that the universe of such purchasers is limited and that it has already approached these potential purchasers. The Purchaser meets these requirements.

5.      Debtor is under pressure from its secured lender to resolve the situation, and the Purchaser wishes to close the transaction as quickly as practicable to allow a smooth

04158512.4

**SALE MOTION - 2**

transfer of operating assets without further depletion. As a result, Debtor is requesting an expedited schedule for approving the Sale Procedures.

JURISDICTION

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.  The statutory predicates for the relief herein are sections 105(a), 363(b), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.

## II.      BACKGROUND

### A.      General Background.

7.      Debtor, headquartered in Fairfield, Idaho, is an Idaho corporation.

8.      The Debtor manufactures, sells, rents and services various pipe products to agricultural, municipalities, mines and other commercial operations in its market areas in Idaho, Utah, North Dakota, the Pacific Northwest and the Intermountain West.

9.      The Debtor's principal lender is Banner Bank, who has declared a default and who has opposed use of cash collateral in this chapter 11 proceeding.

10.      Debtor has commenced this chapter 11 case as the only plausible mechanism to protect, to the greatest extent possible, Debtor's assets and creditors.  By commencing this chapter 11 case, Debtor hopes to sell its assets.

### B.      Entry into the Stalking Horse APA.

11.      Following its comprehensive marketing efforts, after strategic analysis and negotiations, Debtor identified the Purchaser's bid for the assets as the proposal presenting the greatest benefit to the interests of Debtor's creditors.  After extensive negotiations regarding the

04158512.4

**SALE MOTION - 3**

terms and conditions thereof, Debtor and the Purchaser have executed the Stalking Horse APA, which remains subject to this Court's approval.

### C.    The Need for an Expedited Sale Process.

12.    The Sale is the only viable option that effectively addresses Debtor's financial situation.   Also the Debtor is requesting relief for the following reasons:

13.    First, a non-expedited process allowing for a longer auction period would lend little to no net value to Debtor's estate, and could indeed prove futile.  With the marketing process ongoing for about one year already, Debtor believes that every party that reasonably could be expected to have the interest and financial capacity to consummate a purchase has already had notice of the opportunity and declined to do so.   That marketing process resulted in two potential purchasers that competed for the opportunity to be a stalking-horse bidder. Conducting a sale of the assets while there are two interested purchasers is the best time to conduct such a sale.

14.     Debtor has made extensive financial and operational information available to potential purchasers, including the other party that sought to be the stalking-horse bidder, which has provided ample opportunity to prospective buyers to conduct significant levels of due diligence, with full cooperation by Debtor.  Therefore, potential bidders who may re-emerge and participate in the bidding process should have little need for further time to make and submit an Initial Overbid (as defined below).

15.    Also during this period, the Purchaser made it clear to Debtor, as did the other potential stalking-horse bidder, that unless the Debtor was willing, in the event the Purchaser was not the successful bidder, to reimburse the Purchaser for its expenses and recognize the benefit to the estate obtained through the Purchaser's willingness to submit a

04158512.4

**SALE MOTION - 4**

stalking horse bid and initiate the sale process, the Purchaser would not have continued its

efforts.  For this reason, the Stalking Horse APA notes that the right to a break-up fee and

reimbursement of expenses was an integral part of the negotiations surrounding the Stalking

Horse APA, and in the absence of Debtor's acceptance of such protections, the Purchaser would

not have entered into the Stalking Horse APA, nor would the Purchaser be obligated to proceed

to closing.

16.     Therefore, an expedited process designed to consummate the Sale within

30–45 days, while also providing an opportunity for other bidders to participate and demonstrate

their willingness to close on higher and better terms than the Purchaser, achieves the overarching

objectives of Debtor: preserving the Debtor's going concern for the benefit of its creditors and

employees.

17.     Further, to the proposed procedures and timeline and in the *Motion for

Order Setting Hearing Dates* filed contemporaneously herewith, the Sale represents the best

opportunity to sell the Debtor's assets and thereby preserve the value of Debtor's assets for the

benefit of all stakeholders.  The Sale is the only viable and timely alternative.

### III.    RELIEF REQUESTED

18.     Debtor executed the Stalking Horse APA for the sale of the assets to the

Purchaser.  The Sale is subject to approval by this Court and additional competitive bidding

pursuant to various sale procedures (the "Sale Procedures").  By this Motion, Debtor seeks entry

of two orders as follows:

        a.      Sale Procedures Order (substantially in the form annexed hereto as

                Exhibit B):

04158512.4

**SALE MOTION - 5**

      (i)      Approving the Sale Procedures (which includes approval of the form of Stalking Horse APA, and the Breakup Fee);

      (ii)      Approving the form and manner of the Notice of Sale;

      (iii)      Scheduling the sale hearing (the "Sale Hearing") to take place not less than 20 days following the entry of the Sale Procedures Order; and

      (iv)      Granting related relief.

b.      "Sale Order" (substantially in the form annexed hereto as Exhibit C):

      (v)      Approving and confirming that the sale of the assets shall be free and clear of all interests as defined in the Bankruptcy Code, including Encumbrances;

      (vi)      Approving and confirming assumption by Purchaser of the Assigned Contracts (as defined in the Stalking Horse APA);

      (vii)      Waiving the 14-day stay incorporated by Bankruptcy Rules 6004(h) and 6006(d); and

      (viii)      Confirming that the Successful Bidder and Debtor may cause the closing to occur as soon as practicable after the entry of the Sale Order.

19.      Debtor proposes the following timeline in connection with the relief sought in this Motion:

| Event | Date |
|-------|------|

04158512.4

**SALE MOTION - 6**

| Objection deadline for Sale Procedures portion of the Motion | 7  days after Motion filed |
|---|---|
| Hearing on Sale Procedures portion of the Motion | 7 days after Motion filed |
| Deadline for competing bids | 2 days before the Auction |
| Auction | 20 - 25 days after entry of the Sale Procedures Order |
| Hearing on the remainder of the Sale Motion | Immediately following the Auction |

## IV.    SALE OF ASSETS

### A.    Terms and Conditions of the Purchase Agreement[2].

#### 1.    Consideration

20.    The following highlights certain terms and conditions of the Stalking Horse APA, all of which are more fully explained in the Stalking Horse APA:

a.    The Purchaser will pay to Debtor the Purchase Price of $3,500,000.00, subject to the Holdback Amount and any other allowed adjustments, all as defined and set forth in the Stalking Horse APA.

b.    The Purchaser will acquire the Purchased Assets from Debtor free and clear of all interests pursuant to section 363 of the Bankruptcy Code, with the liens to attach to the proceeds received.

c.    The Purchaser will assume the lease of Debtor's facility in Salt Lake City, Utah and will enter into new leases for Debtor's facilities in Idaho and North Dakota.

---

[2] In the event of any inconsistencies between the terms of the Purchase Agreement and this Motion, the Purchase Agreement shall control.

04158512.4

**SALE MOTION - 7**

      d.      Debtor anticipates that the Purchaer may offer employment to most, if not all, of Debtor's employees.

      **2.**      **Closing Date and Closing Conditions.**

21.      The Sale is subject to approval by the Court and competitive bidding pursuant to the Sale Procedures Order.  Further, Debtor's and the Purchaser's obligations to consummate the Sale are jointly subject to certain closing conditions as set forth more fully in the Stalking Horse APA, such as the following: (i) the entry of the final Sale Order by the Court approving the Sale, unless such condition is waived, partially or entirely, by the Purchaser; and (ii) the absence of an injunction, restraining order, or other ruling prohibiting or limiting the Sale Order or the Sale.

22.      The Purchaser's and Debtor's obligations to consummate the Sale are also conditioned upon, among other things, the performance and compliance with the covenants and obligations set forth in the Stalking Horse APA, and the truth and accuracy of the representations and warranties set forth in the Purchaser Agreement.

23.      A complete explanation of the conditions to the parties' obligations to consummate the Sale is set forth in Article 9 of the Stalking Horse APA.

**B.**      **Sale Procedures.**

24.      The proposed Sale Procedures are designed to allow other potential qualified organizations to bid for the right to complete the Sale in a competitive sale process. Debtor crafted the Sale Procedures to permit an expedited Sale necessitated by the imminent risks faced by Debtor, while simultaneously fostering an orderly and fair sale process. Debtor has determined that the Sale Procedures establish a framework that is most likely to maximize the value of the assets for the benefit of Debtor's estate, its creditors, and other interested parties.

04158512.4

**SALE MOTION - 8**

25. The proposed Sale Procedures are attached hereto as <u>Exhibit D</u>. Interested parties should read the entire Sale Procedures.

**C.** **Notice Procedures.**

26. Debtor proposes that it will, within two days of the entry of the Sale Procedures Order on this Court's docket, serve a copy of each of the Motion, the proposed form of Sale Order, the Sale Procedures Order, and a copy of the Notice of Sale, substantially in the form annexed hereto as <u>Exhibit</u> E by first-class mail, postage prepaid, upon the following parties: (i) all entities known to have expressed an interest in a transaction with respect to the sale of Debtor's assets, as evidenced by executing an NDA with Debtor, or by participating in discussions with Debtor after having executed an NDA; (ii) all parties to the Stalking Horse APA and all related agreements; (iii) the Office of the United States Trustee; (iv) all entities that have requested notice in accordance with Bankruptcy Rule 2002; (v) Banner Bank, Ford Motor Credit and Idaho Central Credit Union(vi) all other known creditors of Debtor; and (vii) counsel to any official committee established in this chapter 11 case.

## V.   ARGUMENT

**A.** **The Assets Are Property of Debtor's Bankruptcy Estate.**

27. Section 541(a) of the Bankruptcy Code provides in relevant part:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> …
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

04158512.4

**SALE MOTION - 9**

11 U.S.C. § 541.  Congress intended that § 541 be interpreted broadly.  *See, e.g.*, *Weingarten Nostat, Inc. v. Serv. Merch. Co., Inc.*, 396 F.3d 737, 742 (6th Cir. 2005).  The assets are property of Debtor's estate under section 541(a), and therefore are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 157(b)(2)(M).

> **B.    The Sale Should be Approved as Fair, Reasonable, and in the Best Interest of Creditors.**

28.    Bankruptcy Code section 363(b) and Bankruptcy Rule 6004 authorize a debtor to sell assets of the estate other than in the ordinary course of business, after notice and a hearing.  *See, e.g.*, *Quintex Entm't, Inc. v. Quintex Entm't, Inc.* (*In re Quintex Entm't, Inc.*), 950 F.2d 1492, 1495 (9th Cir. 1991).  In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or public auction.  *See* FED. R. BANKR. P. 6004(f)(1).  Here, Debtor believes that its ability to select the highest and best bidder at the Court-supervised Auction enhances and benefits the marketing process by providing a motivation for bidders to submit a Qualified Bid with a high market value.

29.    Certain circumstances necessitate and allow for the sale of virtually all of the estate's property prior to confirmation of a plan.  *Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983) ("There must be some articulated business justification . . . before the bankruptcy judge may order such disposition.").  One of the most obvious business justifications in any sale of estate assets is the ultimate purpose of obtaining the highest price for the property sold.  *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991).  "In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e. it is fair and reasonable, that it has been given adequate

marketing, that it has been negotiated and proposed in good faith, that the purchaser is

proceeding in good faith, and that it is an 'arms-length transaction.' *Id.*

30.     In assessing the prudence of a section 363 sale, courts have examined

(i) whether the proposed transaction has a valid business justification or good business reason;

(ii) whether the sale is the result of good faith negotiations; and (iii) whether the proposed

purchase price is fair and reasonable. *See, e.g.*, *240 N. Brand Partners, Ltd. v. Colony GFP

Partners, L.P.* (*In re 240 N Brand Partners, Ltd.*), 200 B.R. 653, 659 (9th Cir. B.A.P. 1996); *In

re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986); *Travelers Ins. Co. v. Plaza

Family P'Ship* (*In re Plaza Family P 'Ship*), 95 B.R. 166 (Bankr. E.D. Cal. 1989); *Fearing v.

Seror* (*In re Fearing*), 143 Fed. Appx. 744 (9th Cir. 2005).  All three factors are satisfied here.

**1.     There is a Valid Business Justification and Good Business Reason to
Support the Sale.**

31.     The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank*

(*In re Walter*), 83 B.R. 14, 15-16 (B.A.P. 9th Cir. 1988), applied a flexible, case-by-case test to

determine whether a sound business purpose justifies a proposed sale under section 363(b).

Adopting the reasoning of the Fifth Circuit in *Institutional Creditors of Continental Air Lines,

Inc. v. Continental Air Lines, Inc.* (*In re Cont'l Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir.

1986), and the Second Circuit in *In re Lionel Corp.*, 722 F.2d at 1071, the Panel noted that

whether a proffered justification is sufficient will depend on the specifics of the case.  This Court

should consider all salient factors pertaining to the case and act to further the diverse interests of

the debtor and creditors alike.  *Id.*

32.     The instant facts amply support Debtor's business judgment that the Sale

is in the best interest of its creditors and Debtor's estate.  As detailed above, an expedited Sale is

Debtor's only viable opportunity to maximize the value of the assets for the benefit of its

04158512.4

**SALE MOTION - 11**

creditors and to create an opportunity for new employment for at least a portion of its employees who might otherwise necessarily have their employment terminated.

33.     Moreover, the proposed Sale Procedures and the submission of a stalking horse bid afford assurance that the highest and best price will be realized in connection with the Sale.  A Notice of Sale will be provided to all persons Debtor believes may have an interest in the Sale.  Debtor believes notice to such parties will provide appropriate encouragement of competitive bidding.

34.     In sum, the Sale achieves the greatest overall benefit for Debtor's estate. Absent an expedited Sale, the Debtor will not remain viable.  A termination by Debtor of its operations will cause immediate loss in value of certain operating assets, thereby diminishing recovery for the estate from Debtor's most significant assets.  Accordingly, Debtor believes, in the exercise of its sound business judgment, that the Sale should be approved, pursuant to an expedited process, to provide the best, and for practical purposes, the only, means to salvage the assets of the Debtor.

35.     The courts have long recognized that where a sale by a debtor is made in good faith and upon a reasonable basis—as the Sale is here—"[t]he court will not entertain objections to a trustee's [debtor in possession's] conduct of the estate." *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *see also In re S. Biotech., Inc.*, 37 B.R. 318, 322-23 (Bankr. M.D. Fla. 1983).  This is because it is the "Trustee [debtor in possession], not the Court, [that] is selling [the] property." *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002).  In accordance with *Walters* and the foregoing cases, Debtor submits that there is valid business justification and good business reason for the Sale on the terms contained in the Stalking Horse APA and in the manner provided in the Sale Procedures.  As

04158512.4

**SALE MOTION - 12**

such, Debtor believes this Court should approve the Sale and allow it to move forward expeditiously.

      **2.      The Sale Is in Good Faith and Thus the Purchaser or the Successful Bidder Should be Afforded the Protections of 11 U.S.C. § 363(m).**

36.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to any entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

37.    Although the Bankruptcy Code does not define "good faith," courts have found that the good faith requirement focuses principally on the disclosure of all material sale terms and absence of fraud or collusion between bidders.  *See, e.g.*, *Abbotts Dairies*, 788 F.2d at 147-48; *see also In re Apex Oil Co.*, 92 B.R. 847, 869-71 (Bankr. E.D. Mo. 1988).  It is typically only "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" that leads to a determination that there was a lack of good faith in a sale proceeding.  *T.C. Investors v. Joseph* (*In re M Capital Corp.*), 290 B.R. 743, 748 (B.A.P. 9th Cir. 2003) (quoting *Cmty. Thrift & Loan v. Suchy* (*In re Suchy*), 786 F.2d 900, 902 (9th Cir. 1985)).

38.    While the Ninth Circuit does not require a finding of good faith to be made by a bankruptcy court at the time of the sale,[3] the Sale Motion (including the attached exhibits) demonstrate that the Sale is proposed in good faith.  The Stalking Horse APA is a

---

[3] *See Thomas v. Namba* (*In re Thomas*), 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002) ("[T]he Ninth Circuit does not require that a finding of 'good faith' be made at the time of sale" (internal citations omitted)).

product of intensive arm's-length negotiations between Debtor and the Purchaser, and does not contain special treatment for Debtor, Debtor's estate, the Purchaser, or their respective affiliates or insiders.  The Stalking Horse APA specifically provides for overbids at the Auction. Moreover, Debtor submits that any asset purchase agreement reached as a result of the Sale Procedures will be an arm's-length, negotiated transaction entitled to the protections of section 363(m), and not the result of collusion with respect to the bidding or the sale.  In addition, the terms of the Sale will be fully disclosed to creditors and other potential bidders pursuant to the Notice of Sale as described above.

39.     Based on the foregoing, the Purchaser or the Successful Bidder, as the case may be, should be deemed a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code.

### 3.     The Purchase Price Is Fair and Reasonable.

40.     An auction sale is generally considered to establish sufficient value for the assets being sold.  *See, e.g.*, *Abbotts Dairies*, 788 F.2d at 149. Debtor believes that the Sale process has been structured in a manner that will secure the highest purchase price for the assets being sold.  Debtor has extensively marketed Debtor, an effort that has generated two current expressions of interest.  Debtor will also provide a Notice of Sale to all known potential bidders, thereby maximizing the possibility that competing bidders will come forward to pay a higher price for the assets than offered by the Purchaser in the Stalking Horse APA.  In essence, the Purchaser has set the floor for the bidding at the Auction.  Just as the Ninth Circuit acknowledged in *Arnold & Baker*, the precise value of the assets being sold will only be recognized at—and as a result of—the sale of the assets.  *Arnold & Baker Farms v. United States* (*In re Arnold & Baker Farms*), 85 F.3d 1415, 1421 (9th Cir. 1996).

04158512.4

**SALE MOTION - 14**

41.     Finally, courts have recognized that a debtor is entitled to "'great judicial deference' in deciding which bid to accept as the best and highest bid." *Gulf States Steel*, 285 B.R. at 516 (internal citation omitted).  Here, too, Debtor is entitled to deference in determining not only the manner in which the assets are to be sold, but how the value of those assets is to be maximized.  Based on extensive marketing efforts and negotiations surrounding the Stalking Horse APA, Debtor believes that the Purchaser's offer (subject to overbid at the Auction) satisfies the requirement that the price paid for the assets be fair and reasonable.

**4.     Adequate and Reasonable Notice Has Been Provided.**

42.     Section 363 of the Bankruptcy Code requires that interested parties receive adequate notice of the sale.  Full disclosure of the terms of the Sale will be provided pursuant to the Notice of Sale as described above.  Such notice is reasonably calculated to provide timely and adequate notice to Debtor's major creditor constituencies, those parties most interested in this case, and those parties potentially interested in bidding on the assets.

**C.     The Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for the Sale of the Estate's Assets Free and Clear of Liens, Claims, and Encumbrances.**

43.     Section 363(f) of the Bankruptcy Code permits debtors to sell assets free and clear of liens, claims, and encumbrances with interests in the property attaching to the net proceeds of the sale.  Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)     applicable nonbankruptcy law permits sale of such property five and clear of such interest;
>
> (2)     such entity consents;

04158512.4

**SALE MOTION - 15**

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

44.     Pursuant to the Stalking Horse APA, where Debtor represents and warrants that the assets are "free and clear of all Encumbrances,"[4]  Debtor requests that the assets be transferred to the Purchaser free and clear of all Encumbrances with interests in property attaching to the proceeds of the Sale of the assets.  Debtor further represents that the following are claimed as encumbrances against the property being sold:

    a.  Banner Bank claims a blanket lien on the assets securing three debts of approximately $2,842,000.00[5], $116,404.00 and $843,871.00.

    b.  Idaho Central Credit Union claims a lien on the 2014 Ford F-150 Truck securing a debt of approximately $8,862.00.

    c.  Ford Motor Credit claims a lien on three vehicles:  a 2013 Ford F-150 Pickup; a 2012 Ford F-150 Pickup and a 2015 Ford F-150 Pickup, securing debts of approximately $7,399.00, $14,171.00 and $4,631.00, respectively.

---

[4] *See* Purchase Agreement,

[5] It should be noted that Banner Bank's debt figures are substantially higher on the operating debt that Debtor's calculations.  Debtor suspects this is because Banner Bank has not accounted for all payments, has applied the adequate protection to interest rather than principal, and due to a substantial amount of penalities, late charges and other fees that are objectionable.

**D.     The Proposed Bidding Protections Are Reasonable and Necessary to Preserve the Sale Process and Enhance the Value of Debtor's Estate.**

45.     To preserve the Sale process, and the resources already expended by Debtor's bankruptcy estate in favor of such process, Debtor seeks to approve certain bidding protections, including a minimum Initial Overbid and Successive Overbids and the Breakup Fee (collectively, the "Bidding Protections"). These Bidding Protections will ensure a competitive and efficient bidding process which excludes disingenuous bidders while preserving the participation of a stalking-horse bidder.

46.     Notably, during the past six months, only two parties, including the Purchaser, emerged as a serious buyer willing and able to purchase the assets under a proposed section 363 sale structure. Now, as the Sale process draws to a close, further marketing efforts are compounded by Debtor's shrinking resources, which create practical timing constraints. At this point, Debtor can only proceed with serious buyers. The bidding requirements contained in the Sale Procedures, therefore, will function as an effective tool to identify only highly motivated bidders. An Initial Overbid requirement of $200,000 will ensure both that the competing bidders are serious and that their overbids are meaningfully better for Debtor (notwithstanding the added cost of facilitating further diligence to new bidders under time and publicity constraints). Ultimately, the competing Qualified Bidders will ensure that the auction will generate a material benefit to Debtor's estate as a whole. Similarly, the required Overbids will function as an effective filtering tool in the pool of prospective bidders and ensure that competing bidders are seriously motivated to purchase the assets. Thus, the Overbids also provide a benefit to Debtor's estate.

47.     Another Bidding Protection—meant to preserve the Sale process and ultimately preserve Debtor Estate resources already devoted to that Sale process—is the Breakup

04158512.4

**SALE MOTION - 17**

Fee.  The Breakup Fee is intended to reimburse the Purchaser for its expenses incurred in

connection with the sale process, up to the amount of the Breakup Fee, including its legal fees

and other costs incurred in the negotiation of the Stalking Horse APA and conducting due

diligence, and to recognize the benefit to the estate of the Purchaser's willingness to submit a

stalking horse bid and allow the sale process to be initiated.  Incentives such as the Breakup Fee

encourage a potential purchaser to invest the requisite time, money, and effort to negotiate with a

debtor and perform the necessary due diligence attendant to the acquisition of a debtor's assets,

despite the inherent risks and uncertainties of the chapter 11 process.  "Agreements to provide

breakup fees or reimbursement of fees and expenses are meant to compensate the potential

acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers."  *In re*

*S.N.A. Nut Co.*, 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995).  In this case, the Purchaser's due

diligence has resulted in the creation of an electronic data room that contains documents that any

serious bidder would want to review as part of its due diligence.

48.     The Purchaser has informed Debtor that it would not have continued

discussions with Debtor or incurred such expenses without the prospect of the Breakup Fee, nor

would the Purchaser have an incentive to continue the Sale process through closing.  Indeed,

under the Stalking Horse APA, the Purchaser has the right to abandon the Sale should the

Breakup Fee be denied even partially.  Without a stalking-horse, Debtor cannot move forward.

Therefore, in order to ensure an effective and competitive Sale process (which requires a

stalking-horse), Debtor seeks authority to pay the Breakup Fee if the Purchaser is not ultimately

the Successful Bidder, to ensure the Purchaser's continued participation.

49.     As noted above, the Purchaser has expended substantial time and expense

in documenting and negotiating the Sale and in conducting due diligence.  The Breakup Fee,

04158512.4

**SALE MOTION - 18**

therefore, is directly related to the unreimbursed amounts incurred by the Purchaser in relation to the Sale. Debtor believes that the Bidding Protections are reasonable, given the benefits to the estate of having a stalking horse and a definitive Stalking Horse APA, and the risk to the Purchaser that a third-party offer ultimately may be accepted, and necessary to preserve and enhance the value of Debtor's estate.

50. In the bankruptcy context, the test for determining whether a proposed break-up fee should be approved is whether it is in the best interests of the estate. *S.N.A. Nut Co.*, 186 B.R. at 104; *see also In re Am. W.t Airlines, Inc.*, 166 B.R. 908 (Bankr. D. Ariz. 1994); *In re Hupp Indus., Inc.*, 140 B.R. 191 (Bankr. N.D. Ohio 1992). There must be compelling circumstances "which clearly indicate that payment of the fee would be in the best interests of the estate." *S.N.A. Nut Co.*, 186 B.R. at 105. Accordingly, to be approved, bidding incentives must provide some benefit to the debtor's estate. *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999).

51. The proposed Bidding Protections satisfy this standard. The Stalking Horse APA and the Bidding Protections are the product of extended good faith, arm's-length negotiations between Debtor and the Purchaser. They are fair and reasonable in amount, particularly in view of the Purchaser's extensive efforts to date, the risk to the Purchaser of being used as a "stalking horse bidder," and the stabilizing effect that the execution of the Stalking Horse APA is expected to have (thereby preserving value for creditors and increasing the likelihood of additional bidding).

52. Further, the Bidding Protections already have encouraged competitive bidding, in that the Purchaser would not have entered into the Stalking Horse APA without these provisions. The mere existence of the Bidding Protections permits Debtor to insist that

04158512.4

**SALE MOTION - 19**

competing bids for its assets be materially higher or otherwise better than the Stalking Horse

APA, a clear benefit to Debtor's estate.

53.     In sum, Debtor's ability to offer the Bidding Protections enables it to

ensure the Sale to a contractually committed bidder at a price it believes to be fair, while at the

same time providing it with the potential of even greater benefit to its estate.  Thus, the Bidding

Protections should be approved.

**E.     This Court Should Waive the Fourteen-Day Stay Period Imposed by
Bankruptcy Rules 6004(h) and 6006(d).**

54.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale,

or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless

the court orders otherwise."  FED. R. BANKR. P. 6004(h).  Debtor requests that the stay imposed

by Bankruptcy Rule 6004(h) be waived under the circumstances of this case.  It is in the interest

of Debtor's creditors and estate that the Sale be consummated as quickly as possible without any

stay pending appeal.

55.     Debtor has noticed the hearing on this Motion to all of its creditors,

interest holders, and other parties-in-interest, and therefore any person having any objection to

the Motion has been afforded a reasonable opportunity to voice any objections or concerns.

Accordingly, Debtor is aware of no prejudice that would be caused by the Court's waiver of

Bankruptcy Rule 6004(h).  Debtor requests that any order approving the Sale be effective

immediately by providing that the fourteen-day stay is inapplicable.

## VI.    NOTICE

56.     Notice of this Motion will be provided to (i) all entities known to have

expressed an interest in a transaction with respect to Debtor or the assets (or a portion thereof);

(ii) any entities known to have asserted any Encumbrance in or upon the Shares; (iii) all parties

04158512.4

**SALE MOTION - 20**

to the APA and all related agreements; (iv) the Office of the United States Trustee; (v) all entities

that have requested notice in accordance with Bankruptcy Rule 2002; (vi) all other known

creditors of Debtor; and (vii) counsel to any official committee established in this Chapter 11

case.  In light of the nature of the relief requested herein, Debtor submits that no other or further

notice is required.

**VII.    CONCLUSION**

57.    For all of the foregoing reasons, Debtor respectfully requests entry of an

order granting the relief requested herein and such other and further relief as the Court deems

just.

DATED this  15th  day of September 2017.

COSHO HUMPHREY, LLP


By /s/ Joseph M. Meier
        Joseph M. Meier – Of the Firm
        Attorneys for Debtor

04158512.4

**SALE MOTION - 21**